By the Court. 

*

This is a case of great import tance, both as to the amount of property in dispute, and the legal principles involved in its de-cisión.
I. The first question, that presents itself for the decision of the Court, is, whether the claim of the appellants is barred by a prescription of ten years.
Several authorities have been cited and, at first view, it would appear that some of them (particularly Febrero) support the doctrine contended for by the appellees; but, upon a close examination of the subject, it will bé found, that thirty, not ten years, is the period of prescription in an action for the division of gains, or the partition of an estate.
It is, indeed, said by Febrero that among persons of full age, after a lapse óf ten years, a division of the inheritance shall be presumed ; but it is clear, from his subsequent observations, that the claimants, upon whom the burthen of prbof is thrown, are permitted to shew that no division was made. In this case, so far fr,om its being pretended, that this has been done, the right of the appellants to partition,-at any time, is denied. The Court are of opinion that even, could *114 the argument of prescription be attended to, at this stage of the cause, it would not avail the ap-pellees.
II. The will of Mad. Meuilion is the next subject, for the consideration of the Court. It is said by the appellants, that it does not appear, from the notary’s certificate of the execution of the will, that it was dictated by the testatrix, in the presence of the witnesses. It has been very correctly observed, that all the solemnities required, in the execution of testaments, are matters of strict la\ir, and ought to be observed. But the objection, to the validity of the will, comes with an ill grace indeed from the heirs of Mad. Meuil-lon, who twenty years ago, recognized its legality, in the most solemn manner, before the proper authority, and accepted from the husband of their sister ,a renunciation of considerable advantages, held under it. If there had existed any doubt, upon this subject, at that period, there can be no question that efforts would have been made to destroy it, by a regular suit, instituted for that purpose, and that would have been the proper time; but the Court are of opinion that, after the solemn act of the very parties appellant, and the long period that has elapsed (in the course of which some of the witnesses have died) it would he xan act of great injustice to permit the validity of the will to be shaken. But, independently *115 of this serious objection, if we attend to the cer-J , tificate of the notary, we shall find that all the essential requisites were complied with : he certifies that the testatrix declared, and dictated the will to him, and that it was made and1 signed by the testatrix, and the witnesses, after it was read ; from which, it may fairly be inferred, that the four wit-⅝ nesses and the notary were all present during the dictation and execution.
III. On the part of the appellees, it is contended that the renunciation of Mr. Meuillon was not executed, with all the solemnities, required by the then existing laws; and is consequently void. This instrument appears to have been made before Jacques Massicot, captain of militia, Commandant and Judge of the parish of St. Charles. It is said, that by the laws of the par-tidas, it is declared that all acts respecting property, above the value of 1500 maravedís d’oro, shall be executed before, and with the knowledge of the Juez Mayor, or superior'Judge of the plape; and this is construed to mean, before the Auditor or principal Judge of the colony.
We can never believe that it was the intention of the monarchs of Spain, to require all that strictness in the execution of acts in their distant colonies, which was required in their populous 'European villages and towns, or that the inhabitants of their most remote Districts in this, or any *116 otheri of, their colonies, should be compelled to execute instruments for the conveyance of property above the value of a certain amount, before the Auditor, or principal Judge of the Province. Eveuin Spain, they might be' made, in the prer sence of a Corregidor, Alcalde-Major or other principal officer. This country was laid out in Commandantcies, or Districts, and all acts within the District, were executed before the Commandant or Judge, and deposited with him. To require a strict compliance with a law, made seven or eight hundred years ago, before America was known, intended for a different region of the world, and a different state of things, and which would shake the titles of half the people of the Country, would in our opinion be. iniquitous and absurd. We believe the practice of the country to hávé been, as stated above. , The Court are of opinion that the Judge of the District was sufficiently authorised, to receive the declaration of Meuillon, and that, consequently, the renunciation was executed with the necessary solemnities.
IV. The next point, for the decision of the Court, is the true construction of this act of renunciation. It,was passed on the 10th of November Í792. . By the statement of facts it appears that Madame Meuillon, on the 31st. of December 1791, made her will and by the ninth clause, she gives the enjoyment of her part, coming from *117 the succession of her niother, tp her: husband j during his life, and at his death to her heira, Meuillon had received in account 2,000 dollars, and more was in expectancy. By the 10th clause, Mad. Meuillon declares her intention, to leave to her husband the absolute disposition of the goods acquired in the community, that is to say, to, “ give them to such of her relations, as he shall believe worthy, ok to dispose of them., in any manner, without being held to an account. ” By this testament, Meuillon had a life estate, a usuT fruct of the succession of his wife, and the abso7 lute disposition of-the community of gains. He remained in possession, and did no act, fbi a considerable time, by which he evinced an iiv téntion to give, to the heirs of his wife, any part of the community. On the 10th of November, 1792, Meuillon by a written act declares, that of his own will he renounces all legacies, dispositions and all other advantages generally whatever, stipulated in his favour in the will of his wife: of . which legacies, donations, dispositions and rights and alf other advantages generally whatever, for the friendship, he bears her brothers and sisters he makes an abandonment, purely and simply : to which effect he agrees tp pay back, the 2000 dol-v lars, he had received, under the express condition of their "paying the legacies charged on the succession. The heirs accept the renunciation and promise to stand in the place of Meuillon. It *118 *s contended by the appellees, that the renunciation relates solely to the property, which was to come from the inheritance of the wife, and n'ot to ally' part of the property, acquired during the marriage : of this opinion was the Judge below, and from that Judgment is this appeal.
It must be confessed that the conduct of the parties goes far to impress a belief that such was their understanding at the time—the long silence of the heirs of Mad. Meuilion, and the several purchases they made at the sale of Mr. Meuillon’s estate are certainly strong circumstances to shew their opinion of the renunciation—this, however, is not conclusive. The Court must decide.the rights of the litigants, by the instrument they have executed and thé law arising from it. Courts wall no doubt give such a construction to a deed, as will fulfil the intention of the parties, when that intention is evidently seen. General declarations will sometimes be restrained by subsequent particular limitations and dispositions; and attention must always be given to the principal object of the contract or agreement. So, in this instance, if, from any part of the instrument, it could be clearly ascertained that the object of the parties was merely the inheritance of Mad. Meuillon, we would restrain the general words of the renunciation, and confine it to that particular estate. But, is there any thing in the deed, restrictive of the general words? Mr. Meuillon *119 renounces all legacies, dispositions, donations, adVantages and rights, stipülated in his favour, by his wife’s will. Was not the absolute disposition of the community, a stipulation, disposition, right or advantage under the will ? If so, it is as clearly renounced, as is his claim to the usufruct or life-estate in the succession of his wife. The Court are of opinion, that the wife’s share, in the community of acquets, was renounced to the heirs of Mad. Meuillon.
But, it is contended that the community continued for the benefit of the appellants to the death of Mr. Meuillon : and to this point, many authorities have been cited. Admitting some of the cases to have weight, there are circumstances, in this transaction, which take it completely out of the principles relied on. A community can only be said to continue, when a copartnership existed, and when no act has been done, evincing a determination to dissolve it, or when no circumstance occur amounting to a dissolution.
But, in this case, there never did exist a community, between Mr. Meuillon and the heirs of his wife. He succeeded to the rights of his wife, and enjoyed them for a considerable time—he was bound to no account, and therefore made no inventory ;, and if, by an act of liberality, he afterwards gave to the heirs of Mde. Meuillon whát he was entitled to, under the will (that is *120 ^ s^lare the acquets at the time of her death,) ⅛ shall riot be construed to work a penalty, and injury on himself, or be presumed that he meant to contract a partnership, with those who had never been associated with him, who had never lived with him, to whom he had already sufficiently exhibited marks of kindness, and who surely have rio right now to claim from his heirs a moiety Of the income of an estate, acquired by his exertions ; in which the appellants had no participation.
This doctrine of the continuation of the community is founded in the fuero real of the kingdom of Spain.. We think it would be easy to shew, from the authority of Febrero, Azevedo and others, that it is necessary to prove the fuero real to be in use and force, in the place, where the continuation of the community is contended for. Febrero, de particiones, b. 1, chap. 4, declares,^ “ the continuation of the conjugal community exists in four cases : one of which is where by custom it has prevailed in a particular place ; but it must llave prevailed, without interruption, or by unquestionable use of the laws of fuero ; and this usage must be proved by other partitions, or divisions, which have been made in those places; but if the usage of those laws be not conclusively proved, they have nq effect, because, the laws of fiero ought to be respected, only when they are '•‘^‘Tved and used: as is ordained by the first law *121 of Toro. The laws of‘Toro (which were made and published in 1505, about 30Ó years after those of the fuero real) having expressly ordained, that . they, who attempt to avail themselves of the laws, shall prove that they are in force, in the place where the continuation of the community is claimed. Nothing of that sort being offered here, * no instance being shewn of the partition of an estate according to such principles, altho’ thousands have been partitioned, the Court, upon this ground alone, would be authorised to reject it— but were they in force, we are of opinion they • would have no application to the present case.
' In order to establish what was the share, to 'which Mad. Meuillon’s heirs were entitled, it will be necessary to refer to some of the leading prin- . tiples which prevail, on the subject of the com- / munity of gains. At the time of the dissolution of the marriage, all the effects, which the husband and wife possess are presumed common gains, unless they shew which of the effects, they brought in marriage, or have been given them separately,' or they have respectively inherited. After having deducted the amount which the husband and wife have proved they brought into marriage or after-wards, and the debts which have been contracted during the marriage, the rest is considered the property of the partnership.
It would have been sufficient for this Court, *122 to have reversed the judgment of the District Court, on the ground ol the erroneous construction of the renunciation, and to have sent the case down with instructions to ascertain the amount of the community, at the death of Mad. Meuillon; but, anxious to cause justice to be done, in the shortest possible delay, we have been induced to express the opinion of the Court, on several points that have been mentioned in the; course of the argument.
Í. With respect to the plantation and ne-groes, possessed by Mr. Meuillon, before his marriage, and which afterwards went to Mather, it is the opinion of the Court, that the community cannot be credited for any part of the supposed profits, during the five years of marriage—this property had been acquired before, and Mr. Meuillon, by the laws of the country, had a right to make what disposition of it he pleased. We do not think, the production of a loose receipt (and that too found in the possession of Mr. ' Meuillon) by which he acknowledged to have received a certain quantity of indigo, as (the last payment of the plantation, nnaccompanied by other explanatory evidence, sufficient to overturn the solemn allegation of Meuillon himself in a Court of justice, and the answer of Mather confessing all the facts charged, as appears recorded in the proceedings of the late Superior Court, *123 It is there also acknowledged by Mather, that the small advances made, were but a trifling indemnification, for the slaves that he (Mather) had sold, and for the enjoyment of the rest for twenty two or twenty three years.
2. With respect to the notes gi.vén by the relations of Meuillon, for certain slaves sold to them, and which were acquired during the marriage, the Court are of opinion, that they ought to be considered, as part of the acquets or gains. It appears that Meuillon, at a period which cannot be ascertained, made an indorsement on the notes, declaring that, if they should not be paid during his life, the debtors should be discharged— - there is no doubt that Meuillon might have made any disposition of the notes he pleased, during the marriage, provided it was not in fraud of his wife. At the death of the wife, the right of her heirs or legatees accrued, and these notes, being unpaid, at the dissolution of the community, by the death of thfe wife, and Meuillon having renounced all advantages under the will, the appellants are entitled to a moiety of the amount of the notes. Had he made this disposition of the notes, and the wife had survived, still she would have had her moiety of the amount;( because, at the very instant’ §f his death, her right would have been complete.
3. The Court is further df opinion that the *124 amount -of'sides of the negroes, bought from Ma- ? ther and Strother, should be brought into the community and that the amount^ due by James Mather and Mather and Strother, be deducted j from the total gains. j
4. As to the lots and houses in New-Or- ,1 leans, we are of opinion that the lots purchased, ⅛ during the marriage, and all such items, as may J; be , within the principles of this decision, be ^ brought into the community, and accounted for in the partition of the estate, and that there be ⅞ deducted therefrom the value of the buildings and improvements, made by Meuillon, subsequently to the dissolution of the marriage, and also the value of the lot of eleven feet adjoining those, purchased after the death of the wife.
It is ordered and decreed that the judgment of , the District Court be reversed with costs.

 Derbigny, J. did not join in this opinion, having befell of counsel in the cause.